IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| WILLIAM D. BURGAN, LYNETTE BURGAN, | CV 16-61-BLG-CSO |
| Plaintiffs, | |
| | ORDER ADDRESSING DEFENDANTS' JOINT MOTION TO DISMISS |
| vs. | |
| ALEXANDER NIXON, THOMAS RIEGER, CARBON COUNTY, | |
| Defendants. | |

Plaintiffs William D. Burgan ("Bill Burgan" or "Burgan") and

Lynette Burgan (collectively, the "Burgans") brought this action under

42 U.S.C. § 1983 against Carbon County Attorney Alexander[1] Nixon

("Nixon"), former Carbon County Sheriff Thomas Rieger ("Rieger"),[2]

and Carbon County ("the County"), Montana.  *Verified Cmplt. (ECF No.*

---

[1]Nixon represents that his first name is "Alex," not "Alexander," but he does not dispute that he is the named defendant.  *Defts' Opening Br. (ECF No. 12) at 6, n.1.*

[2]The Burgans allege in their Complaint that Rieger was Carbon County Sheriff from 2007 through 2014, which includes the period relevant to their claims in this action.  *Verified Cmplt. (ECF No. 1) at ¶ 17.*

*1).*[3]  Pending is Defendants' Joint Motion to Dismiss under Rule 12(b)(6).[4]  *Defts' Joint Mtn. to Dismiss (ECF No. 11).*  As discussed below, the Court will grant the motion in part and deny it in part.[5]

# I. __Introduction__

In their Complaint, the Burgans claim that Defendants wrongly charged Bill Burgan with criminal trespass and threatened to arrest him following his dispute with a neighbor concerning the Burgans' access via easement to an irrigation ditch headgate located on the neighbor's property.  *ECF No. 1 at 1-15.*  The trespassing charge and threat of arrest, the Burgans claim, deprived them of their access to the headgate for approximately 18 months, which caused them to suffer damages, including: (1) costs of defending the criminal trespass charge; (2) costs involved in a state civil action concerning the easement to the

---

[3]"ECF No." refers to the document as numbered in the Court's Electronic Case Files.  *See The Bluebook, A Uniform System of Citation, § 10.8.3.*  Citations to page numbers refer to those assigned by the electronic filing system.

[4]References to rules are to the Federal Rules of Civil Procedure unless otherwise noted.

[5]Upon the parties' written consent, this case was assigned to the undersigned for all purposes.  *Notice of Assignment (ECF No. 14).*

headgate; (3) costs to replace hay that could not be grown on the Burgans' property as a result of their inability to control the headgate and irrigate their property; (4) damages to the Burgans' pasture land; and (5) emotional distress. *Id. at 15-16.* They also seek punitive damages. *Id. at 26.*

The Burgans' claims against all three Defendants are:

Count 1: unreasonable seizure of property in violation of the Fourth Amendment to the U.S. Constitution, *id. at 16-17*;

Count 2: private taking of property for private purposes in violation of the Takings Clause of the Fifth Amendment to the U.S. Constitution, *id. at 17-18*;

Count 3: violation of procedural due process rights guaranteed by the Fourteenth Amendment to the U.S. Constitution, *id. at 19-20*;

Count 4: unreasonable seizure of property in violation of Art. II, § 3 of the Montana Constitution, *id. at 20-21*;

Count 5: private taking of property for private purposes in violation of Art. II, § 28 of the Montana Constitution, *id. at 21-22*;

Count 6: violation of procedural due process rights guaranteed by Art. II, § 17 of the Montana Constitution, *id. at 22-23*;

Count 7: malicious prosecution under Montana law, *id. at 23-24*;

Count 8:    abuse of process under Montana law, *id. at 24-25*; and

Count 9:    violation of Montana's Anti-Intimidation Act, *id. at 25-26*.

This Court has federal question jurisdiction under 28 U.S.C. § 1331 because the Burgans assert claims under 42 U.S.C. § 1983 for alleged violations of rights under the U.S. Constitution. And the Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the Burgans' state law claims.

## II.    Background

For purposes of the pending motion, the Court accepts all factual allegations in the Complaint as true and construes them in the light most favorable to the Burgans. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). The Burgans' Complaint alleges as follows.

In 1990, the Burgans purchased real property in Carbon County that they use for their residence and for operating a farm and ranch on which they raise livestock and hay.[6]

---

[6]In their Complaint, the Burgans identify the property as follows: "NENE Section 10; E1/2NW, NWNW, N1/2SE, SENE Section 11, and NWSW and portions SWNW Section 12, Township 6 South, Range 20 East, Carbon County, Montana." *ECF No. 1, ¶ 20.*

The Burgans' property is irrigated with water diverted from Rock Creek to a ditch known as the "Consolidated Ditch," which conveys water to Dry Creek. Dry Creek, in turn, conveys water to a secondary point of diversion known as the Hunter-Northey Ditch.

The diversion point and headgate for the Hunter-Northey Ditch is located on property south of, and adjacent to, the Burgans' property. The Burgans have a right to use water from Rock Creek in the amount of 3.75 cubic feet per second. Their water right has a priority date of July 15, 1894.

Water diverted into the Hunter-Northey Ditch flows north through the Burgans' property and proceeds through the properties of other irrigators who use water from the ditch.

The headgate can be accessed only by a gravel road that runs west from Teini Road, a county-owned road. The Headgate Access Road has been used by the Burgans, their predecessors-in-interest, and other users of the Hunter-Northey Ditch since 1894 as the only means of access to the headgate for the Hunter-Northey Ditch. Continuous access to the headgate is necessary for irrigation and to prevent the

Burgans' property from being flooded, particularly during heavy rains.

In 2007, James Brien ("Brien") purchased from Brian Williams ("Williams") the property adjacent to and south of the Burgans' property. The headgate for the Hunter- Northey Ditch is located on Brien's property. Williams informed Brien at the time of the purchase that the Burgans and other users of the Hunter-Northey Ditch had an easement running across the property and needed continued, unhindered access to the headgate on Dry Creek.

After purchasing the property, Brien began ingratiating himself with Carbon County officials. He hosted barbeques that included Nixon and Rieger as guests. Brien and Nixon soon became friends. They also became hunting partners on private property leased by Nixon, a licensed outfitter.

In the summer of 2012, Brien locked the gate located at the entrance to the Headgate Access Road, thereby blocking the Burgans' access to the headgate. Bill Burgan sent a letter to Brien dated July 20, 2012, informing him of the Burgans' right to use the Headgate Access Road to access their headgate.

Brien responded on July 25, 2012, claiming that Burgan's driving endangered the young son of a neighbor, Jason Sironen ("Sironen"). Burgan responded with a letter dated July 30, 2012, reminding Brien of the Burgans' easement rights and that Brien's predecessor-in-interest had recognized this right years before Brien acquired the property. Burgan attached to this letter a written statement by Sironen and his wife denying that Burgan's driving had endangered their son.

On August 6, 2012, Brien sent an email to Burgan stating that he would allow the Burgans to access the headgate "on a limited basis (with no easement created)" but insisted that the Burgans execute and submit a "hold harmless" agreement.

On April 3, 2013, Brien sent a letter to the Burgans prohibiting them from accessing the headgate unless they did so by (1) traveling along the side of the Hunter-Northey ditch, (2) walking on the Headgate Access Road after submitting a hold harmless agreement or insurance policy to Brien, or (3) using a motor vehicle "at a speed no greater than a walk" after submitting a hold harmless agreement or insurance policy to Brien.

On April 30, 2013, Bill Burgan sent an email to Nixon requesting assistance and attaching a copy of the letter from Brien. Burgan also advised Nixon in the email of the "historical easement" he and other landowners had to the Headgate Access Road.

Nixon responded by email. He stated: "I don't have enough information to ascertain whether or not you have an easement across Brien's land – other than along the ditch easement – and respectfully leave that determination for a judge."

On the morning of May 16, 2013, Bill Burgan went to the sheriff's office and submitted what Undersheriff Dan McJunkin ("McJunkin") referred to in his report as "copies of the right to access the Hunter-Northey ditch which is located on the John Teini property out of Roberts [Montana]. Bill has access through a Patented right which was established in 1894. Bill wanted us to know about this because previous access had been denied."

Between May 16, 2013, and July 23, 2013, Bill Burgan submitted additional documents to Rieger and McJunkin substantiating his easement rights, including the following:

- An affidavit executed on June 24, 2013, by Donald Coutts, the Burgans' predecessor-in-interest, stating that he and other users of the Hunter-Northey Ditch have had since 1894 uninterrupted use of a prescriptive easement to use the Headgate Access Road to access the headgate on what is now Brien's property;

- A letter from Brian Williams, Brien's predecessor-in-interest, containing the following statement: "When I sold my Montana property to Jim Brien, I made it very clear to Mr. Brien, via the representing dual agent realtor, that Mr. Bill Burgan and the water users below him would need continued unhindered access to their Dry Creek head-gate via their prescribed access easement across Mr. Brien's new property."

McJunkin provided copies of these documents to Defendant Nixon.  Rieger reviewed and approved McJunkin's report.

On or about June 10, 2013, Bill Burgan cut a lock Brien had placed on the gate to the Headgate Access Road in an attempt to prevent the Burgans from accessing the headgate.  Burgan replaced it with a two-lock system that enabled both Brien and the Burgans to unlock the gate.

Brien notified the sheriff's office of this action.  He also told the sheriff's office to send a deputy to the Burgans' property because there was going to be "trouble."

A Carbon County sheriff's deputy responded by going to the

Burgans' property and waited with the Burgans for nearly an hour. Brien, however, did not show up at the Burgans' property despite his earlier threat.

Deputy Ben Mahoney of the Carbon County Sheriff's office later informed Brien "this was a civil matter and [Brien] needed to contact an attorney."

On July 1, 2013, Bill Burgan sent a letter to the Montana Attorney General's office requesting an opinion regarding his easement rights. He attached to the letter copies of documents he had provided to Defendants. On July 22, 2013, Nixon forwarded to the Attorney General's office copies of the emails he exchanged with Burgan on April 30, 2013. The Attorney General's office sent a letter dated August 5, 2013, to Bill Burgan stating that the Attorney General would not aid the Burgans because "this is clearly a civil issue."

On August 15, 2013, Bill Burgan and his son, Chase Burgan, used the Headgate Access Road in order to adjust the headgate on the Hunter-Northey Ditch. Brien demanded that the sheriff's office charge Burgan and his son with trespassing. Rieger consulted with Nixon

later that day on how to respond to Brien's demand. Nixon advised

Rieger that the Burgans had committed a criminal trespass.

The following day, Rieger instructed a deputy sheriff to sign a

"Notice to Appear and Complaint" for Bill and Chase Burgan and serve

the criminal complaints at the Burgan residence. The complaints

alleged that the Burgans committed a criminal trespass. At the time

he served Bill Burgan with the complaint, the deputy threatened to

arrest Burgan if he again used the Headgate Access Road.

The Burgans were never tried on the trespassing charge. Instead,

the charge was dismissed on January 7, 2014, by Judge L. Kevin

Nichols. Defendants did not rescind their threat to arrest the Burgans

if they used the Headgate Access Road.

The Burgans filed a declaratory action against Brien on May 5,

2014, in the Montana Twenty-Second Judicial District (Burgan v.

Brien, Cause No. DV 14-50) concerning their easement on the Headgate

Access Road.

On February 26, 2015, the Honorable Michael G. Moses issued an

order denying Brien's motion for summary judgment. In that order,

Judge Moses found that Brien had locked the gate across the Headgate Access Road that the Burgans "and the other water users with rights to the Hunter-Northey ditch have historically used to access the ditch's headgate." Judge Moses found as follows regarding the historical use of the easement:

> The historical use of the secondary easement at issue in this case includes the following facts. Since purchasing the property in 1990, Plaintiffs have always accessed the headgate to the Hunter-Northey ditch by traveling the private drive off of Teini Road, which is a county road. The private drive is located on what is now Defendants' property. Plaintiffs have always used a motorized vehicle to drive down the private drive and off the private drive down to the headgate over the grass on what is now the Defendants' property. Testimony indicates that during some years a gate was placed at the entrance of the private drive, but was not locked and did not restrict access of those with secondary easement rights to the Hunter-Northey ditch.

Based upon the undisputed evidence submitted by the Burgans regarding the historical use of the Headgate Access Road, Judge Moses held the following:

> Pursuant to §70-17-112(1), MCA, [the Burgans] have a right to access the headgate through a secondary easement on [Brien's] property as it has historically done. Historically, [the Burgans] have accessed the headgate by way of the private drive and driving on [Brien's] property leading up to the headgate.

Judge Moses therefore ruled against Brien:

> The Court finds Defendants have failed to meet their burden
> to prove there are no genuine issues of material fact as to
> the easement claims in this case. As such, Defendants'
> Motion for Summary Judgment on Easement Claims is
> DENIED.

In that same order, Judge Moses granted summary judgment in

favor of the Burgans:

> [The Burgans], however, have met their burden to prove
> there are no genuine issues of material fact as to the
> easement claims. Defendants have failed to show by any
> more than mere denial or speculation that genuine issues of
> material fact exist. In sum, [the Burgans'] Motion for
> Summary Judgment on Easement Claims is hereby
> GRANTED insomuch as it establishes that [the Burgans]
> have a statutory right pursuant to § 70-17-112, MCA and a
> right established by historical use to access the headgate via
> Defendants' private drive using a motorized vehicle.

The Burgans were permitted to access their headgate after the

issuance of this order.  On September 15, 2015, Judge Moses ordered

Brien to pay attorneys fees and costs to the Burgans.  In that order,

Judge Moses found "the easement right to the ditch head-gate is

extremely valuable: if the Burgans cannot access this head-gate to

regulate the flow of water, they stand to suffer potentially significant

damage."

Between August 2013 and February 2015, the Burgans could not access the Headgate Access Road because of a fear that they would be arrested if they did so. The Burgans claim that they suffered damages as a result of being denied access to their headgate from August 2013 to February 2015, including the costs of defending against the criminal trespass charge, costs involved in the civil suit against Brien, costs to replace the hay that could not be grown on the Burgans' property as a result of their inability to control their headgate and irrigate their property, damage to the Burgans' pasture land, and emotional distress.

## III.  Parties' Arguments

Defendants advance five principal arguments with multiple subparts in seeking dismissal of all nine of the Burgans' claims. *Defts' Opening Br. (ECF No. 12) at 10-26.* First, they argue that, to the extent the Burgans' Complaint can be read to assert claims for violations of Bill Burgan's Fourth, Fifth, or Fourteenth Amendment rights by prosecuting him for trespassing, Nixon enjoys absolute immunity as a prosecutor. *Id. at 10-11.* With respect to all other claims against them, Defendants argue that: (1) Nixon is entitled to

qualified immunity because, although a prosecutor, he was performing administrative or investigative functions normally performed by a detective or police officer, *id. at 11*; (2) Nixon and Rieger are entitled to qualified immunity because the Burgans cannot demonstrate the violation of a clearly established right, *id. at 14*; and (3) Rieger enjoys qualified immunity for the additional reason that he properly relied on Nixon's legal advice. *Id.*

Second, respecting the Burgans' claims for unreasonable seizure of property in violation of the Fourth Amendment (Count 1), taking of private property in violation of the Takings Clause of the Fifth Amendment (Count 2), and deprivation of procedural due process in violation of the Fourteenth Amendment (Count 3), Defendants argue that Nixon and Rieger are entitled to qualified immunity. *Id. at 15-18.* They argue that: (1) the Burgans' Fourth Amendment claim is based on the premise that their property was seized when Bill Burgan was charged with trespassing, but because the Burgans' interest in the property did not exist until it was established by court order one and a half years later, the Burgans cannot make out a Fourth Amendment

claim, *id. at 15*; (2) the trespassing charge against Bill Burgan was supported by probable cause and did not abridge any clearly established right because no court had yet adjudicated the scope of the Burgans' claimed prescriptive or secondary easement at that time, *id. at 16-17*; (3) Lynette Burgan cannot establish a Fourth Amendment claim because she has not alleged that she was charged with trespassing and the Complaint fails to allege that Defendants violated her constitutional rights, *id. at 17*; (4) the taking and deprivation-of-due-process claims also should be dismissed for the same reasons because Bill Burgan did not have a clearly established property right when he was charged with trespassing and it was objectively reasonable for Nixon and Rieger to conclude that there was probable cause to charge him, *id.*; and (5) Lynette Burgan cannot establish a taking or deprivation-of-due-process claim because she was not charged with trespassing, so there is no allegation relating to her rights under the Fifth and Fourteenth Amendments, thus entitling Nixon and Rieger to qualified immunity, *id. at 17-18*.

Third, respecting the Burgans' claims under the Montana

Constitution alleging seizure of property (Count 4), taking of property (Count 5), and deprivation of due process (Count 6), Defendants, conceding that qualified immunity does not shield them, argue that: (1) Bill Burgan cannot state a claim because he did not have any recognized property interest in the easement when he was cited for trespassing on August 16, 2013, *id. at 18*; and (2) the Complaint does not allege that Lynette Burgan was ever charged with trespassing or that she ever sought to use the easement, so she, too, has failed to state a claim, *id*.

Fourth, respecting the Burgans' state law claims for malicious prosecution (Count 7), abuse of process (Count 8), and violation of Montana's Anti-Intimidation Act (Count 9), Defendants argue that: (1) because probable cause supported the trespassing charge, the Burgans cannot satisfy every element of a malicious prosecution claim, an abuse of process claim, or an Anti-Intimidation Act claim, *id. at 19-21*; (2) because the Complaint does not allege that Lynette Burgan was ever charged or prosecuted, so she cannot establish every element of a malicious prosecution claim, an abuse of process claim, or an Anti-

Intimidation Act claim, *id. at 20-21*; and (3) because Nixon and Rieger were vested with lawful authority to charge Bill Burgan with trespassing and there was probable cause to support the charge, he cannot state a claim for violation of the Anti-Intimidation Act, *id. at 21*.

Fifth, Defendants argue that the Complaint fails to state a claim against Carbon County because: (1) it fails to set forth factual allegations regarding any Carbon County policy respecting decisions to prosecute or not prosecute that would give rise to § 1983 liability, *id. at 23*; and (2) Nixon, as county attorney, is acting as an agent of the state and not of the county when advising on a decision to prosecute, so that the actions complained of in support of the Burgans' § 1983 claim are state actions liability for which is barred by the Eleventh Amendment to the U.S. Constitution, *id. at 24-25*.

In response, the Burgans argue that: (1) Nixon does not enjoy absolute immunity, which does not apply to a prosecutor's instruction to a law enforcement officer concerning the existence of probable cause so that Nixon is not absolutely immune for instructing Rieger that Bill Burgan had committed a criminal trespass, *Resp. Br. (ECF No. 15) at 6,*

*13-14*; (2) Nixon and Rieger are not entitled to qualified immunity because, under the facts alleged in the Complaint, probable cause to cite Bill Burgan did not exist, Nixon and Rieger violated Burgan's right to not be charged in the absence of probable cause, and that right was clearly established at the time, *id. at 6-7, 14-23*; (3) Lynette Burgan's claims should not be dismissed because, even though Defendants did not charge her with trespassing, they charged her husband and son and she "could reasonably assume the same fate awaited her if she accessed her family's headgate, particularly since Brien had not consented to her entry onto his property[ ]" and because she suffered the same damages that Bill Burgan suffered, *id. at 23*; (4) Carbon County is subject to liability under *Monell v. Department of Soc. Services of New York*, 436 U.S. 658, 690-91 (1978), because: (a) Nixon acted as a final policymaker when he instructed Rieger to charge Bill Burgan with trespassing in the absence of probable cause; and (b) Nixon acted as a county officer rather than a state officer when he instructed Rieger to charge Burgan with trespassing and thus Eleventh Amendment immunity does not apply, *id. at 24-30*; and (5) Carbon County is subject to liability under

*Monell* because Rieger acted as a final policymaker for the county when he charged Burgan with trespassing, *id. at 30-31*.

In reply, Defendants argue that: (1) Nixon is entitled to absolute immunity "to the extent the Complaint alleges Nixon violated Burgan's constitutional rights by prosecuting him[,]" *Defts' Reply Br. (ECF No. 18) at 2-3*; (2) Nixon and Rieger are entitled to qualified immunity because, despite Burgan's efforts to get various county and state officials to confirm his secondary easement, he did not have a judicial determination that the easement existed, so there was probable cause to charge him with trespassing when he cut the lock on Brien's gate on June 10, 2013, and probable cause is a complete defense to § 1983 claims for malicious prosecution, *id. at 4-5*; (3) Burgan's easement was not established until February 2015, so Nixon and Rieger had probable cause to charge him with trespassing in August 2013, *id. at 5-7*; (4) even if Nixon and Rieger mistakenly concluded that there was probable cause to charge Burgan, their mistake was reasonable under the totality of the circumstances so they are entitled to qualified immunity, *id. at 7-8*; (5) the Burgans have failed to state a claim against Carbon

County because they have not sufficiently identified any county policy that caused the Burgans injury, any policy concerning the prosecution of a Montana criminal law violation is a state policy and not a county policy, and a county attorney, when carrying out prosecutorial duties for violations of state law, is an agent of the state and not of the county, *id. at 8-14*; (6) because the Burgans did not have a cognizable property interest in the secondary easement in August 2013, they did not suffer any impairment of a property right under Montana law, and have failed to state a claim for violation of their rights under the Montana Constitution, *id. at 15*; (7) the Burgans' tort claims should be dismissed because they did not include any argument or analysis in support of such claims in responding to Defendants' motion to dismiss, *id*.; and (8) Lynette Burgan has failed to state a claim under any theory because she has not alleged that she attempted to use the easement or that she was prevented from doing so, nor was she charged or prosecuted for trespassing, *id*.

## IV.   <u>Legal Standard for Rule 12(b)(6) Motions</u>

"Dismissal under Rule 12(b)(6) is proper only when the complaint

either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009) (quoting Fed. R. Civ. P 8(a)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plausibility determination is context specific, and courts must draw on judicial experience and common sense in evaluating a complaint. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

A court considering a Rule 12(b)(6) motion must accept as true the

allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F.Supp. 299, 304 (C.D. Cal. 1996) (*citing Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

## V. __Discussion__

The Court addresses Defendants' arguments as follows: (1) whether Nixon is entitled to absolute immunity as a prosecutor; (2) whether Nixon and Rieger are entitled to qualified immunity respecting Bill Burgan's claims for violation of the U.S. Constitution; (3) whether Bill Burgan's state law claims should be dismissed; (4) whether Lynette Burgan's claims should be dismissed; and (5) whether the claims against Carbon County should be dismissed.

**A.** **Whether Nixon Is Entitled to Absolute Immunity as a Prosecutor**

A state prosecutor is entitled to absolute immunity from liability under § 1983 for violating a person's federal constitutional rights when they engage in activities "intimately associated with the judicial phase of the criminal process." *Garmon v. County of Los Angeles*, ___ F.3d ___, 2016 WL 3606745, *3 (9th Cir., July 5, 2016) (*quoting Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "[P]hrased differently, [prosecutors are absolutely immune] 'when performing the traditional functions of an advocate.'" *Id.* (*quoting Kalina v. Fletcher*, 522 U.S. 118, 131 (1997)).

In evaluating whether government officials' actions are entitled to absolute immunity rather than only qualified immunity, courts are to focus on "the nature of the function performed." *Id.* (citations omitted). "Absolute immunity applies when initiating a prosecution and presenting the State's case, and during professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial . . . after a decision to seek an indictment has been made[.]" *Id.* (citations and internal quotation marks omitted). But

"absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation, makes statements to the press, or acts as a complaining witness in support of a[n arrest] warrant application." *Id.* (citations and internal quotation marks omitted).

"Absolute immunity is an extreme remedy, and it is justified only where any lesser degree of immunity could impair the judicial process itself." *Id.* (citations and internal quotation marks omitted). "The proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity." *Brooks v. Clark County*, ___ F.3d ___, 2016 WL 3632372, *3 (9th Cir., July 7, 2016) (*quoting Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993)). "The justification must take care to explain why the official hoping to secure absolute immunity would not be sufficiently shielded by qualified immunity, which already affords officials considerable leeway to perform their jobs without fear of personal liability." *Id.*

Here, on the current record, the Court concludes that Nixon is not entitled to absolute immunity. The Burgans' Complaint, construed most favorably to them, alleges that Nixon: (1) consulted with Rieger

about how to respond to Brien's demand that the sheriff's office charge Burgan and his son with trespassing, *ECF No. 1 at ¶¶ 61-62*; and (2) advised Rieger that the Burgans had committed a criminal trespass, *id. at ¶ 63*. The nature of these functions appears to be advice given during the sheriff's criminal investigation. Under the foregoing authority, absolute immunity does not apply. *Garmon*, 2016 WL 3606745, *3.

Nixon, as the party seeking absolute immunity, has failed to carry his burden of showing that absolute immunity is justified for his performance of these functions. *Id*. Instead, he has merely stated that, as a prosecutor, he enjoys absolute immunity to the extent the Burgans' Complaint can be read to assert claims for violations of constitutional rights by prosecuting him for trespassing. *ECF No. 12 at 10-11*. But there is no allegation in the Complaint that Nixon filed a prosecution against the Burgans. Nixon's contentions are not sufficient to carry his burden on a Rule 12(b)(6) motion. Thus, the Court concludes that Nixon does not enjoy absolute immunity for his acts as alleged in the Complaint.

**B.** **Whether Nixon and Rieger Are Entitled to Qualified Immunity Respecting Bill Burgan's Claims Brought Pursuant to § 1983**

Title 42, U.S.C. § 1983, provides:

> Every person who, under color of any [state law] ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

42 U.S.C. § 1983.

"Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (citing *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 978 (9th Cir. 2004) (internal quotation marks omitted)). The statute's purpose "is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Id.* (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)).

The United States Supreme Court recently reaffirmed that "[t]he doctrine of qualified immunity protects government officials from

liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Wood v. Moss*, 134 S.Ct. 2056, 2066-67 (2014) (*quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "Requiring the alleged violation of law to be 'clearly established' 'balances . . . the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably .'" *Id.* (*quoting Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The "dispositive inquiry" "is whether it would [have been] clear to a reasonable officer" in the agents' position "that [their] conduct was unlawful in the situation [they] confronted." *Id.* (*quoting Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

In the case at hand, the Court addresses the qualified immunity doctrine in the context of a motion to dismiss. The Court must determine whether the Complaint's allegations, accepted as true,f satisfy the following two-step test:

first, [this Court must] decide whether the officer violated a plaintiff's constitutional right; if the answer to that inquiry is "yes," [the Court] proceed[s] to determine whether the constitutional right was "clearly established in light of the specific context of the case" at the time of the events in question. *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009) (*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)), *cert. denied*, 558 U.S. 1110 (2010). The Supreme Court has instructed that [courts] may "exercise [our] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson* [*v. Callahan*, 555 U.S. 223, 236 (2009)].

*Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011).

As noted, Nixon and Rieger maintain that qualified immunity shields them from the Burgans' claims for alleged violations of the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution because Bill Burgan did not have an established secondary easement when he was charged with criminal trespass on August 16, 2013. Thus, they argue, the Burgans cannot state a claim for seizure of a property interest under the Fourth Amendment, a "taking" of property under the Fifth Amendment, or a claim for deprivation of property without due process of law under the Fourteenth Amendment because the Burgans had no right to the property. And, Nixon and Rieger argue, because the Burgans did not have an established property interest in the easement

at the time, it was objectively reasonable for them to conclude that probable cause existed to charge Bill Burgan with trespassing. Thus, they argue, the Burgans cannot establish violation of a clearly established right. The Court is not persuaded.

First, the Court concludes that the Burgans have sufficiently alleged facts that, taken as true, demonstrate that they had an established property interest in the easement over Brien's land leading to the headgate at all relevant times. For instance, they have alleged in their Complaint, with some supporting exhibits, that: (1) they have a water right from Rock Creek with a priority date of July 15, 1894, *ECF No. 1 at ¶¶ 26-27*; (2) they and their predecessors-in-interest have used the access road to the headgate on Brien's land, along with other uses of the ditch, since 1894, *id. at ¶ 30*; (3) Brian Williams, who owned Brien's property before Brien purchased it from him in 2007, told Brien when he purchased the property that the Burgans and others had an easement running across the property and needed continued access to the headgate, *id. at ¶¶ 32-33*; (4) after Brien locked the gate located at the entrance to the access road leading to the headgate in 2012, Burgan

advised Nixon about the historical easement that he and other users had to access the headgate, *id. at ¶¶ 38, 45-46*; and (5) Bill Burgan provided the sheriff's office with documents supporting his claim to the right to access the headgate via the easement over Brien's property, including affidavits from his predecessor-in-interest, Donald Coutts, and Brien's predecessor-in-interest, Brian Williams, affirming the easement's existence for more than 100 years over Brien's property to allow access to the headgate, which documents the sheriff's office provided to Nixon, *id. at ¶¶ 48-50.*

The Burgans also allege that, when the deputy sheriff served Bill Burgan with the criminal complaint charging him with trespassing, the deputy threatened to arrest him if he again used the easement to access the headgate. *Id. at ¶¶ 64-66.* And, they allege that between August 2013 and February 2015, they could not access the easement to the headgate for fear that they would be arrested if they did. *Id. at ¶ 77.*

In light of the foregoing allegations, the Court concludes that Bill Burgan, by sufficiently alleging facts supporting an established

property interest in the easement over Brien's land leading to the headgate and showing actions by Nixon and Rieger to interfere with that right, has sufficiently alleged violations of his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments. Defendants have raised no other argument contesting Burgan's assertion that his constitutional rights have been violated.[7] Because Burgan has alleged facts to support his claimed property interest in the easement and Nixon and Rieger's interference with that interest, he has satisfied the first step of the two-step qualified immunity test. The Court necessarily rejects Defendants' argument that the Burgans had no right to the easement when Bill Burgan was charged with criminal trespass because the scope of the easement had not yet been adjudicated by a

---

[7]In any event, viewing Burgan's allegations in the light most favorable to him, Nixon and Rieger's conduct violated constitutional rights. For example, "[a] seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027 (9th Cir. 2012) (citation and internal quotation marks omitted). The facts alleged indicate that Nixon and Rieger, by charging Burgan with criminal trespass and making it known that he would be arrested if he ventured upon Brien's property again to use the easement, meaningfully interfered with his interest in the easement in violation of his rights under the Fourth Amendment.

court with jurisdiction over the matter. As noted, the alleged facts, taken as true, demonstrate that the Burgans had the easement they claimed.

Next, the Court must determine whether the constitutional rights alleged to have been violated were "clearly established in light of the specific context of the case" at the time of the events in question. *Mattos*, 661 F.3d at 440 (citations omitted). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, ___ U.S. ___, 136 S.Ct. 305, 308 (2015) (internal quotation marks omitted). There need not be a case directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate. Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id*. (internal quotation marks and citations omitted). And, as alluded to above, "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad

general proposition." *Id*. (internal quotation marks and citations omitted) (emphasis in original).

Here, as noted, Defendants argue only that Burgan cannot establish violation of a clearly established right because he had no property interest in the easement and probable cause existed to charge him with criminal trespass when he went upon the easement without Brien's consent. Thus, they argue, Burgan did not have a clearly established right. The Court cannot agree.

As already discussed, Burgan has sufficiently alleged facts supporting the existence of a well-established property interest in the easement over Brien's land leading to the headgate at all relevant times. For the reasons that follow, the Court further concludes that Burgan has alleged adequate facts establishing that there was not probable cause to charge him with criminal trespass under the particular circumstances of this case.

Under Montana law, probable cause for prosecution means "reasonable grounds for suspicion, supported by circumstances reasonably strong in themselves to warrant a reasonably prudent and

cautious [person] to believe that the accused is guilty of the offense charged." *White v. State Fund*, 305 P.3d at ¶ 36 (Mont. 2013) (*quoting Plouffe v. Mont. Dep't of Pub. Health & Human Servs.*, 45 P.3d 10, ¶ 18 (Mont. 2002)) (internal quotation marks omitted) (alteration in original). The probable cause standard, when applied in federal courts, is in accord. "Probable cause exists if the arresting officers 'had knowledge and reasonably trustworthy information of facts and circumstances sufficient to lead a prudent person to believe [there was a fair probability] that [a citizen] had committed or was committing a crime.'" *Howell v. Earl*, 2014 WL 2594235, *8 (D. Mont., May 30, 2014) (*quoting Gravelet–Blondin v. Shelton*, 728 F.3d 1086, 1097-98 (9th Cir. 2013) (*quoting Maxwell v. County of San Diego*, 697 F.3d 941, 951 (9th Cir. 2012))); *and citing Hart v. Parks*, 450 F.3d 1059, 1066 (9th Cir. 2006) ("Police must only show that, under the totality of the circumstances, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime.") (internal quotations and citations omitted).

Here, Burgan has alleged in the Complaint facts that, taken as

true, demonstrate that there was not probable cause, under the totality of the circumstances, to charge him with criminal trespass. First, as determined above, Burgan alleged facts showing that he had a valid property interest in the easement over Brien's property to access the headgate.

And, respecting whether there was probable cause to charge Bill Burgan with trespassing, Burgan alleges in the Complaint that: (1) he repeatedly advised Nixon and Rieger about the historical easement that he and other users had to access the headgate and he provided them with supporting documentation of his claim to the right that affirmed its existence for more than 100 years, *ECF No. 1 at ¶¶ 38, 45-46, 48-50*; (2) after Brien notified the sheriff's office that Bill Burgan had cut a lock that Brien had placed on the gate to the access road to prevent the Burgans from getting to the headgate, Deputy Mahoney of the sheriff's office informed Brien that "this was a civil matter[,]" *id. at ¶¶ 52-53, 56*; and (3) when Burgen subsequently sent the Montana Attorney General's office correspondence requesting an opinion regarding his easement rights to which he attached copies of the

documents he had provided to Defendants, and after Nixon also sent to the Attorney General's office copies of emails that he had exchanged with Burgan, the Attorney General's office responded that the Attorney General would not aid the Burgans because "this is clearly a civil issue[,]" *id. at ¶¶57-59.*

The Court concludes that these alleged facts, taken as true for purposes of the pending motion to dismiss, show that Nixon and Rieger knew that the dispute between Burgan and Brien was civil, not criminal. Before being charged with criminal trespass, Burgan had provided them with proof that he had a property interest in the easement to the headgate. A sheriff's deputy told Brien, and the Attorney General's office told Burgan, that the matter was civil, not criminal. The Attorney General's position was known to Nixon. Under these alleged facts, the Court concludes that there was not sufficient probable cause to charge Burgan with criminal trespass. "[P]robable cause can only exist in relation to criminal conduct [and] [i]t follows that civil disputes cannot give rise to probable cause." *Stevens v. Rose*, 298 F.3d 880, 883 (9th Cir. 2002) (*quoting Allen v. City of Portland*, 73

F.3d 232, 237 (9th Cir. 1995)).  Without probable cause, it was not

reasonable for Bill Burgan to be charged with criminal trespass.

Under these alleged facts, and Burgan's allegation that he was

deprived of access to the irrigation ditch headgate as a result of the

criminal charge and threat of arrest, Nixon and Rieger should have

known that they were violating Burgan's clearly established

constitutional rights by effectively depriving him of his property.  Thus,

Defendants' argument that they are entitled to qualified immunity

fails.

The Court also finds unpersuasive Rieger's additional argument

that he is entitled to qualified immunity because he relied on Nixon's

advice in charging Burgan with criminal trespass.  "[W]hen a police

officer argues he is entitled to qualified immunity because he relied on

the advice of a prosecutor, it does not render the officer's conduct per se

reasonable[.]" *Friedman v. Boucher*, 580 F.3d 847, 859-60 (9th Cir. 2009)

(*citing Stevens*, 298 F.3d at 884).  Instead, an officer's reliance on a

prosecutor's advice may only serve as evidence of good faith.  *Id*.  But

"if the facts show that the right the officer violated was clearly

established and would be known to a reasonable officer in the circumstances, then the officer is not entitled to qualified immunity, regardless of the prosecutor's advice." *Id.* (citation and internal quotation marks omitted).

Here, for reasons already discussed, Rieger should have known, under the circumstances alleged, that charging Burgan with trespass in the absence of probable cause violated Burgan's clearly established constitutional rights. Qualified immunity is thus not available to him on the basis that he relied on Nixon's advice.

## C. <u>Whether Bill Burgan's State Law Claims Should Be Dismissed for Failure to State a Claim</u>

Defendants also argue that Bill Burgan's state law claims should be dismissed because: (1) he did not have a recognized property interest in the easement when he was charged with criminal trespass on August 16, 2013; and (2) the charge was supported by probable cause. *ECF No. 12 at 18-21*.

For the reasons already discussed above, these arguments fail. Bill Burgan has adequately alleged facts supporting his position that he had a property interest in the easement at the time he was charged and

that Nixon and Rieger had actual knowledge of his interest. And, under the totality of the circumstances of this case, they lacked probable cause to charge him with criminal trespass. Accordingly, Defendants' motion to dismiss Bill Burgan's state law claims will be denied.

### D. Whether Lynette Burgan's Claims Should Be Dismissed for Failure to State a Claim

Defendants have argued separately that Lynette Burgan's claims should be dismissed on the following bases: (1) Counts 1, 2, and 3 fail to state a claim because she has not alleged that she was ever charged with trespassing or that she ever sought to use the easement and was deprived of its use, *ECF No. 12 at 17-18*; (2) Counts 4, 5, and 6 fail for the same reason, *id. at 18*; (3) Count 7, her claim for malicious prosecution, fails because she has not alleged that she was ever prosecuted, *id. at 20*; and (4) Count 8, her claim for abuse of process, and Count 9, her claim for violation of the Montana Anti-Intimidation Act, both should be dismissed because she has not alleged that she was ever charged with criminal trespass, *id. at 20-21*.

As noted, the Burgans concede that Lynette Burgan was not

charged with trespassing, but argue that her claims should not be dismissed because: (1) her husband and son were charged, *ECF No. 15 at 23*; and (2) she "could reasonably assume the same fate awaited her if she accessed her family's headgate, particularly since Brien had not consented to her entry onto his property[,]" *id.*

The Court concludes that Defendants' motion to dismiss, to the extent it challenges the sufficiency of Lynette Burgan's claims, is well-taken. The Burgans' Complaint does not, as it must, "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. The only allegations specific to Lynette Burgan are that she has resided in Carbon County at all relevant times, that she has been married to Bill Burgan since 1986, and that "the Burgans" own certain property on which they live and operate a farm and ranch. *ECF No. 1 at ¶¶ 14, 20-23*. The allegations, to the extent they involve Lynette Burgan, are not sufficient to allow the Court to draw the reasonable inference that Defendants are liable to her for any of the claims she alleges. *See Iqbal*, 556 U.S. at 678. Thus, Defendants' motion must be granted to

the extent that it seeks dismissal of her claims.

If a Rule 12(b)(6) motion to dismiss is granted, claims may be dismissed with or without prejudice, and with or without leave to amend. "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*) (*quoting Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Put another way, leave to amend need not be granted when amendment would be futile. *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).

Here, as noted, Lynette Burgan has failed to state a claim upon which relief can be granted and her claims are subject to dismissal. Because it may be possible to cure these defects by the allegation of additional facts, the motion to dismiss will be granted without prejudice to possible amendment.

### E. <u>Whether the Claims Against Carbon County Should Be Dismissed</u>

As noted, Defendants argue that the Burgans' claims against Carbon County should be dismissed because they failed to set forth

specific facts showing a basis for municipal liability – namely that they have not sufficiently identified any county policy that caused Bill Burgan injury. They also argue that any policy concerning the prosecution of a Montana criminal law violation is a state policy and not a county policy. Finally, they argue that the county attorney, when carrying out prosecutorial duties for violations of state law, is an agent of the state and not of the county.

Municipal entities may be liable under § 1983, but not on a respondeat superior theory. *Monell v. Department of Social Services*, 436 U.S. 658, 690-94 (1978). Rather, it is only when "the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy [ ]'" that the municipality is responsible under § 1983. *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002) (*quoting Monell*, 436 U.S. at 694). To hold a municipality liable under *Monell*, a plaintiff must prove three elements: (1) the existence of an official policy or custom that (2) caused the plaintiff to be subjected to (3) the

denial of a constitutional right. *Conn v. City of Reno*, 591 F.3d 1081,

1102 (9ᵗʰ Cir. 2010) (citations omitted). Courts must strictly adhere to

the stringent requirements for imposing § 1983 liability under *Monell*

so as not to impose liability founded on the respondeat superior

doctrine. *See City of Canton v. Harris*, 489 U.S. 378, 392 (1989).

> Where a plaintiff claims that the municipality has not directly
> inflicted an injury, but nonetheless has caused an employee to do
> so, rigorous standards of culpability and causation must be
> applied to ensure that the municipality is not held liable solely for
> the actions of its employee.

*Board of County Commissioners of Bryan County v. Brown*, 520 U.S.

397, 405 (1997).

Where, as here, there is no expressly adopted official policy "there

are three ways to show a policy or custom of a municipality: (1) by

showing 'a longstanding practice or custom which constitutes the

'standard operating procedure' of the local government entity'; (2) 'by

showing that the decision-making official was, as a matter of state law,

a final policymaking authority whose edicts may fairly be said to

represent official policy in the area of decision'; or (3) 'by showing that

an official with final policy making authority either delegated that

authority to, or ratified the decision of, a subordinate.'" *Rosenbaum v. City and County of San Francisco*, 484 F.3d 1142, 1155 (9th Cir. 2007) (*quoting Ulrich*, 308 F.3d at 984-85) (internal quotation marks and citation marks omitted).

To ultimately sustain a *Monell* claim, a plaintiff must show a sufficient causal connection between enforcement of the municipal policy or practice and the violation of the plaintiff's federally protected right by proving that enforcement of the policy or practice was the "moving force" behind the violation. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166 (1993); *City of Canton*, 489 U.S. at 385 (recognizing there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation").

Here, Bill Burgan relies on the second way, described above, to show a policy or custom of a municipality: "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts may fairly be said to represent official policy in the area of decision[.]" *Rosenbaum*, 484 F.3d at 1155

(citation omitted).  Burgan alleges in the Complaint that Nixon acted as "Carbon County's policymaker in rendering opinions to County officers on matters relating to their duties[,]" *ECF No. 1 at ¶ 16*, and argues in briefing that Nixon acted in that capacity when he advised Rieger that Burgan had committed a criminal trespass upon Brien's property and instructed the sheriff to charge Burgan with criminal trespass even without probable cause.  *ECF No. 15 at 25-30*.  And, Burgan alleges in the Complaint that Rieger acted as "Carbon County's policymaker concerning the issuance of misdemeanor complaints by the sheriff's department[,]" *ECF No. 1 at ¶ 18*, and argues in briefing that Rieger acted in that capacity when he instructed his deputy to charge Bill Burgan with criminal trespass.  *ECF No. 15 at 30-31*.

The United States Supreme Court determined that *Monell*-type "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).  For such liability to attach, "[t]he official must . . . be responsible for establishing final government policy respecting such activity before the municipality can be held liable . . .

[and] whether an official had final policymaking authority is a question of state law." *Id*. at 482-83. Finally, "municipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id*. at 483 (citation omitted).

The Complaint clearly alleges that Sheriff Reiger made a deliberate choice to follow a course of action from among various alternatives by stating that Reiger "instructed a deputy sheriff to cite Bill Burgan and his son for criminal trespassing and inform the Burgans that they would be arrested if they used the easement again." *ECF 1 at 2-3, ¶ 7; at 12-13 ¶¶ 64-66*. The Complaint further alleges that, pursuant to this instruction from Reiger, a deputy sheriff served the Burgans with a Carbon County Sheriff's Office "Notice to Appear and Complaint." *ECF 1-14 at 1*. The Complaint does not allege that Nixon directed Reiger to follow this course of action; it alleges only that Nixon "advised" Rieger that the Burgans had committed a criminal trespass. *ECF No. 1 at 12, ¶ 63*.

As noted, whether a particular official has final policymaking authority is a question of state law. *Jett v. Dallas Independent School Dist.,* 491 U.S. 701, 737 (1989). Thus, Montana law determines whether Rieger, an elected county official, was responsible for establishing final government policy respecting the alleged activities such that *Pembaur* requirements are satisfied.

M.C.A. § 46-1-202(14) defines a "Notice to appear" as "a written direction that is issued by a peace officer and that requests a person to appear before a court at a stated time and place to answer a charge for the alleged commission of an offense." The county sheriff is in charge of the county peace officers and a deputy sheriff may be terminated for the willful disobedience of an order given by the sheriff. *M.C.A. § 7-32-2107.*

Sheriffs are defined as "county officers", and the counties establish their salaries. See *M.C.A. §§ 7-4-2203(d)), 7-4-2503, 7-4-3001.* The Board of County Commissioners is granted the jurisdiction and power, as prescribed by law, to see that a sheriff faithfully performs his duties. *M.C.A. § 7-4-2110(2).* Under analogous

circumstances, the Ninth Circuit has held that a county sheriff acted as an official of the county and thus the county was subject to liability under § 1983. *Cortez v. County of Los Angeles,* 294 F.3d 1186, 1192 (9th Cir. 2002) (holding that county sheriff acted as policymaking official of the county so that county was subject to liability as "person" acting under color of state law). *See also Harper v. City of Los Angeles*, 533 F.3d 1010 (9th Cir. 2008) (holding that police chief's order to file criminal charges unsupported by probable cause established city policy).

For these reasons, the Court finds that the Complaint contains sufficient factual matter, accepted as true, to state a claim against Carbon County that is plausible on its face. Dismissal of Carbon County is not appropriate at this time. Given this conclusion, it is not necessary to address Defendants' other grounds for dismissal of Carbon County.

## VI. <u>Conclusion</u>

For the foregoing reasons, **IT IS ORDERED** that Defendants' joint motion to dismiss (*ECF No. 11*) is GRANTED, without prejudice,

to the extent it seeks dismissal of Plaintiff Lynette Burgan's claims,

and DENIED in all other respects.

DATED this 23rd day of August, 2016.

/s/ Carolyn S. Ostby
United States Magistrate Judge