IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| WILLIAM D. BURGAN and LYNETTE BURGAN, | CV 16-61-BLG-TJC |
| Plaintiffs, | **ORDER** |
| vs. | |
| ALEXANDER NIXON, THOMAS RIEGER, and CARBON COUNTY, | |
| Defendants. | |

Plaintiffs William D. Burgan ("Bill Burgan") and Lynette Burgan (collectively, the "Burgans") bring this action against Carbon County, Montana ("the County") pursuant to 42 U.S.C. § 1983, and against Carbon County Attorney Alex Nixon ("Nixon") and former Carbon County Sheriff Thomas Rieger ("Rieger") (collectively, "Defendants") under Montana state law. (Doc. 56 at 1-5.)

Currently before this Court are the County's Motion to Dismiss the Second Amended Complaint (Doc. 60) and Nixon and Rieger's Joint Motion to Dismiss (Doc. 62), each made under Fed. R. Civ. P. 12(b)(6). Having reviewed the parties' arguments and submissions, and for the reasons discussed below, Nixon and Rieger's motion is GRANTED in part and DENIED in part; the County's motion is DENIED.

/ / /

1

## I. Background

For purposes of the pending Rule 12(b)(6) motion to dismiss, the Court accepts as true all factual allegations in the complaint, and construes them in a light most favorable to the Burgans. *Turner v. City and Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015). Accordingly, the Court has compiled the following factual background from the Burgans' Second Amended Complaint.

The Burgans purchased property near Roberts, Montana in 1990 (the "Burgan Property" or "Property"). (Doc. 56 at 5-6.) They reside at the Property and operate a farm and ranch thereon, where they raise livestock and grow hay. *Id.* at 6. The Property is irrigated with water diverted from Rock Creek to a point of diversion called the Hunter-Northey Ditch. *Id.* The ditch, its headgate, and the Headgate Access Road used to access the headgate are all located on the property directly south of, and adjacent to, the Burgan Property. *Id.* In 2007, James Brien ("Brien") purchased this adjacent property ("Brien Property"). *Id.* at 7. He thereafter began socializing with Nixon and Rieger, hosting them as guests at barbeques, and hunting with Nixon. *Id.* at 8.

The Burgans claim a right to use water diverted into the Hunter-Northey Ditch, with a priority date of July 15, 1894. *Id.* at 6. The only way to access the ditch and headgate is via the Headgate Access Road, which runs along the Brien Property. *Id.* at 6-7. The Burgans, their predecessors-in-interest, and other users of

the ditch have used this road to access and control the headgate since 1894.  *Id.* at

7.  The Burgans require ready access to the headgate to irrigate and prevent

flooding of their ranch.  *Id*.

In the summer of 2012, Brien locked the gate located at the entrance of the

Headgate Access Road, blocking the Burgans' access to the headgate.  *Id.* at 8.  For

the next year, the Burgans attempted to regain access to the headgate, first by

dealing directly with Brien, and then by attempting to enlist the help of Nixon, the

Carbon County Sheriff's Office, and the Montana Attorney General.

Bill Burgan sent several letters to Brien, informing him of the Burgans' right

to use the Headgate Access Road, and reminding Brien that his predecessor-in-

interest had recognized this right.  *Id.*  Brien responded that he would allow the

Burgans to access the headgate "on a limited basis (with no easement created)."

*Id.* at 8-9.  Brien then sent the Burgans a letter prohibiting them from accessing the

headgate unless they followed certain requirements, including walking along the

Headgate Access Road, using a motor vehicle "at a speed no greater than a walk,"

or traveling along the side of the Hunter-Northey ditch.  *Id.* at 9.  Brien also

demanded a hold harmless agreement or insurance policy from the Burgans.  *Id.*

In response, the Burgans informed Nixon of the dispute with Brien, and

attached a copy of Brien's most recent letter.  *Id.*  But Nixon informed the Burgans

that he lacked sufficient information to determine whether the Burgans had an

easement. *Id.* at 9-10. The Burgans then submitted documentation to substantiate their easement claim to the undersheriff, who provided copies to Nixon and Rieger. *Id.* at 10-11.

On or about June 10, 2013, Bill Burgan, with the help of another neighbor, cut a lock that Brien had placed on the gate to the Headgate Access Road, and replaced it with a two-lock system that gave Brien and the other ditch users the ability to unlock the gate. *Id.* at 11. In response, Brien contacted the sheriff's office but was ultimately told that access to the headgate was a civil issue. *Id.*

Thereafter, Bill Burgan sent a letter to the Attorney General requesting an opinion regarding the easement rights. *Id.* at 12. The Attorney General declined, stating "this is clearly a civil issue," and sent a copy of the letter to Nixon. *Id.* at 12-13.

On August 15, 2013, Bill Burgan and his son, Chase Burgan, used the Headgate Access Road to adjust their headgate. *Id.* at 13. Brien contacted the Sheriff's Office and demanded that Bill and Chase Burgan be charged with criminal trespass. *Id.* Later that day, Rieger consulted with Nixon, who advised that the Burgans had committed a criminal trespass. *Id.* Rieger then instructed a deputy sheriff to sign and serve a Notice to Appear and Complaint for criminal trespass (interchangeably the "Notice" and the "Citation") on Bill and Chase Burgan. *Id.* On August 16, 2013, the deputy delivered copies of the Citation to

Bill Burgan. *Id.* at 14. When Bill Burgan told the deputy that "we're going to keep going there," the deputy warned, "you could end up in jail." *Id.* at 14.

The criminal trespass charge was ultimately dismissed on January 7, 2014. The Burgans then filed a declaratory action against Brien on May 5, 2014 in the Montana Twenty-Second Judicial District Court, Carbon County. *Id.* at 14-15. On February 26, 2015, the presiding judge, Hon. Michael Moses, issued an order granting summary judgment in favor of the Burgans. *Id.* at 15-16. Judge Moses determined that the Burgans' motion "establishe[d] that [the Burgans] have a statutory right pursuant to § 70-17-112, MCA and a right established by historical use to access the headgate via [Brien's] private drive using a motorized vehicle." *Id*. at 16; (Doc. 1-15 at 9.)

On May 18, 2016, the Burgans filed the instant action, alleging they were illegally ousted from their property for 18 months because of Defendants' unlawful conduct. (*See* Doc. 1.) Specifically, the Burgans alleged that considering the documentation they provided substantiating their easement, Rieger and Nixon lacked probable cause to cite Bill and Chase Burgan with criminal trespass. *Id.* at 18-24. The Burgans also alleged Defendants acted with the intention to benefit Brien. *Id.* at 20. The Defendants filed a Joint Motion to Dismiss (Doc. 11), which this Court granted, without prejudice, as to Lynette Burgan's claims, but denied in all other respects. (Doc. 19.)

Rieger and Nixon filed an interlocutory appeal to the Ninth Circuit on the issue of qualified immunity. (Doc. 24.) The Ninth Circuit concluded Rieger and Nixon were entitled to qualified immunity, barring the Burgans' federal constitutional claims against them. (Doc. 51.)

The Burgans subsequently filed their Second Amended Complaint ("Complaint") on January 30, 2018. (Doc. 56.) The Burgans now advance six causes of action. Counts One and Two are asserted against Carbon County. The Burgans allege that Nixon and Rieger's unconstitutional conduct can be imputed to Carbon County under a theory of municipal liability. They further assert the County violated the Due Process Clause of the Fourteenth Amendment (Count One), and engaged in the private taking of property for private purposes in violation of the Fifth Amendment (Count Two). (Doc. 56 at 18-20.)

Counts Three through Six are brought against Nixon and Rieger individually, and allege that Nixon and Rieger violated the Burgans' procedural due process rights guaranteed by Article II, § 17 of the Montana Constitution (Count Three); violated the takings clause of Article II, § 29 of the Montana Constitution (Count Four); initiated a malicious prosecution against the Burgans (Count Five); and that their actions constituted an abuse of process (Count Six). *Id.* at 20–23.

The Defendants now move to dismiss all counts of the Complaint.

## II.    Legal Standard

The Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  A

Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  *Navarro v.*

*Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal under Rule 12(b)(6) is

informed by Rule 8(a)(2), which requires a pleading to contain "a short and plain

statement of the claim showing that the pleader is entitled to relief."  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 677–78 (2009).  Dismissal is proper under Fed. R. Civ. P.

12(b)(6) only when the complaint lacks a cognizable legal theory or fails to allege

sufficient facts to support a cognizable legal theory.  *Zixiang Li v. Kerry*, 710 F.3d

995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521

F.3d 1097, 1104 (9th Cir. 2008)).

To survive a 12(b)(6) motion to dismiss, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Id.* at 678.  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Id.*  Plausibility is context-specific,

requiring courts to draw on judicial experience and common sense when evaluating

a complaint.  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

When considering a 12(b)(6) motion, a court must accept as true the

allegations of the complaint and construe them in the light most favorable to the

nonmoving party. *Hardesty v. Barcus*, 2012 WL 705862, *2 (D. Mont. Jan. 20, 2012). However, "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 555 (2007).

## III. Discussion

### A. Carbon County's Motion to Dismiss

As noted above, the Complaint asserts two federal constitutional law claims against Carbon County. First, the Burgans contend that the issuance of the Citation without probable cause deprived them of their property interests in the easement, headgate, and water rights without notice and an opportunity to be heard, in violation of the Due Process Clause of the Fourteenth Amendment. (Doc. 56 at 18.) Second, the Burgans argue that the issuance of the Citation constituted an illegal taking in violation of the Fifth Amendment. *Id.* at 19. They assert the County is liable under 42 U.S.C. § 1983 because Defendants Nixon and Rieger acted as final policymakers for the County when they "caused Bill and Chase Burgan to be falsely charged with criminal trespassing…and threatened with incarceration if the Burgans used the easement again." (Doc. 56 at 18.)

In its motion to dismiss, the County argues that § 1983 liability cannot be imputed to the County under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). (Doc. 61 at 5, 11–12.) The County argues the Burgans have failed to allege a

8

municipal policy or custom responsible for their constitutional violations. (Doc. 61 at 8.) The County contends Nixon and Rieger were commencing a criminal prosecution, which is a state action, and they were therefore acting as state rather than county agents. (Doc. 61 at 8-10.) The County further maintains that the Complaint fails to state a facially plausible claim. (Doc. 61 at 11.) In this regard, the County claims that the Burgans "must set forth facts alleging . . . that Carbon County's violation is part of a policy or custom so persistent and widespread it constitutes a well settled County policy and is not an isolated incident." *Id.* The County argues separately that Lynette Burgan has failed to state a plausible claim for relief. (Doc. 61 at 13.) [1]

The County filed the same motion and presented substantially the same arguments with respect to the Burgan's initial complaint. (Doc. 11.) That motion was denied by U.S. Magistrate Judge Carolyn S. Ostby. (Doc. 19 at 42-49.) The allegations of the Complaint relative to these claims have not changed. In addition, the County has not presented any new grounds or reasons to alter Judge Ostby's decision. Therefore, for the same reasons found by Judge Ostby, the Court finds

---

[1] The County also maintains in its reply brief that the Burgans' claims fail on the merits because the Citation afforded notice and an opportunity to be heard and no taking occurred. (Doc. 74 at 10.) As it did with its takings claim argument, the County merely incorporates Nixon and Rieger's position regarding the Burgans' due process claim. (Doc. 74 at 10.) Specifically, the County maintains that the Citation afforded adequate notice and an opportunity to be heard. *Id.* The Court will address this argument in connection with Nixon and Rieger's motion.

the Complaint alleges sufficient factual matter to state a plausible claim against the County in Counts One and Two of the Complaint.

### B. Nixon and Rieger's Motion to Dismiss

As noted above, the Complaint asserts that Nixon and Rieger violated the Burgans' procedural due process rights guaranteed by Article II, § 17 of the Montana Constitution; violated the takings clause of Article II, § 29 of the Montana Constitution; initiated a malicious prosecution against the Burgans; and their actions constituted an abuse of process. (Doc. 56 at 20-23.)

In their motion to dismiss, Nixon and Rieger argue the Burgans fail to state a claim for relief with respect to any of the claims alleged. First, Nixon asserts he is entitled to prosecutorial immunity as to all claims under Montana law. (Doc. 63 at 23.) With respect to the Burgans' due process claim, Nixon and Rieger argue the issuance of the Citation satisfied procedural due process requirements by affording the Burgans with notice and an opportunity to be heard. (Doc. 63 at 16.) They further maintain that Burgans fail to state a takings claim because the issuance of the Citation was insufficient to constitute a takings. (Doc. 63 at 19.) Finally, regarding the Burgans' state tort claims, Nixon and Rieger argue the Burgans have failed to allege facts necessary to establish the requirements of malicious prosecution and abuse of process claims. (Doc. 63 at 21-24.)

///

### 1. Nixon Is Not Entitled to Absolute Prosecutorial Immunity

Nixon previously filed a motion to dismiss the initial complaint on the grounds that he was entitled to prosecutorial immunity. Judge Ostby determined that Nixon did "not enjoy absolute immunity for his acts as alleged in the Complaint." (Doc. 19 at 26.) Again, Nixon presents no new grounds or reasons to disturb that decision with respect to the Complaint. The Court acknowledges that Nixon has supplemented his argument with additional case law. *See Rosenthal v. Cty. of Madison*, 170 P.3d 493, 499 (Mont. 2007); *Renenger v. State of Montana, Shapiro and Jefferson County*, 2018 WL 4346369 (Mont. 2018). But the functional approach discussed in those cases follows the precedent already analyzed and discussed by Judge Ostby.

Those decisions focus on protecting "participants in the judicial process whose functions are closely associated with those of judicial officers." *Rosenthal*, 170 P.3d at 499. Whether the function of the conduct at issue "occurred in the course of filing and maintaining criminal charges" is significant. *Kelman v. Losleben*, 894 P.2d 955, 957 (1995). A prosecutor's conduct in filing and maintaining criminal charges is entitled to absolute immunity, while "a prosecutor engaged in administrative duties is not entitled to immunity." *Id.* Investigatory functions that occurred prior to filing or maintaining criminal charges are not

intimately involved in the judicial phase of the criminal process and are not given absolute immunity.  *Id.* at 958.

Nixon maintains he is entitled to absolute immunity from civil liability because he was acting within the scope of his prosecutorial duties when he filed or prosecuted the trespassing charge against Bill Burgan.  (Docs. 63 at 22-23, 75 at 6-9.)  Therefore, according to Nixon, this Court should dismiss the Burgans' state law claims.  (Doc. 63 at 24.)  Although Nixon correctly cites the applicable functional approach precedent, he misses the point of the Burgans' argument.

First, the Burgans attribute Nixon's liability to the legal advice he provided to Rieger during the investigative phase, and not to the execution of his prosecutorial duties.  (Doc. 69 at 11-12.)  In other words, Nixon is being sued for advice he gave Rieger, prior to the commencement of a prosecution, to charge the Burgans with criminal trespass despite the lack of probable cause.  (Docs. 68 at 19, 69 at 27.)  Moreover, the Burgans expressly allege that it was Rieger – rather than Nixon – who initiated the criminal prosecution.  *Id.*  Nixon cites to *Kalina*, 522 U.S. at 129, for the proposition that the commencement of a prosecution through a complaint is a prosecutorial function protected by absolute immunity.  (Doc. 75 at 8.)  Even if true, this argument overlooks the critical detail that this prosecution, according to the Complaint, was initiated by the Citation, something only peace officers have authority to issue in Montana.  Mont. Code Ann. § 46-6-310.

Second, *Rosenthal v. Cty. of Madison* does not require a finding of absolute immunity.  In *Rosenthal*, the Montana Supreme Court concluded that the defendant, also a county attorney, was entitled to qualified immunity "at the very least," in a malicious prosecution action stemming from advice he provided to the Attorney General encouraging a criminal complaint against Rosenthal.  *See Rosenthal*, 170 P.3d 493.  Nevertheless, the Court declined to reach definitively the issue of absolute immunity, noting that "[w]hile [the county attorney] may have encouraged the Attorney General to prosecute the case, the ultimate decision to file a complaint was made by the Attorney General and not [the county attorney]."  *Id.* Similarly, Nixon advised Rieger that a criminal trespass occurred, but it is alleged that the decision to prosecute ultimately belonged to Rieger.  The *Rosenthal* Court did not find this conduct was entitled to absolute immunity; and therefore, *Rosenthal* does not mandate a finding of absolute immunity in this case.

For the foregoing reasons, and for the reasons already found by Judge Ostby in previously denying the same motion, the Court finds that dismissal on the basis of prosecutorial immunity is not appropriate at this stage of the proceeding.

### 2. The Burgan's State an Article II, § 17 Due Process Claim and an Article II, § 29 Takings Claim

Nixon and Rieger previously filed a motion to dismiss the initial complaint on the grounds that the Burgan's due process and takings claims under the Montana Constitution failed to state claims because (1) the Burgans did not have a

recognized property interest and (2) the Citation was supported by probable cause. (Doc. 19 at 39.)

Judge Ostby determined that the facts alleged in the Burgans' initial complaint supported a recognized property interest "that Nixon and Rieger had actual knowledge of." (Doc. 19 at 40.) Additionally, Judge Ostby found "under the totality of the circumstances . . . [Nixon and Rieger] lacked probable cause to charge [Bill Burgan] with criminal trespass." *Id.* Nixon and Rieger have not presented any new grounds or reasons to alter that decision.

Therefore, for the same reasons found by Judge Ostby, the Court finds the Complaint alleges sufficient facts to find a recognized property interest under the Burgans' due process claim. Further, the facts alleged are sufficient to support a finding that Nixon and Rieger did not have probable cause to charge Bill Burgan with trespass.

Nevertheless, Nixon and Rieger now supplement their motion to dismiss to include additional grounds. They assert that the Burgan's due process claim should be dismissed because the Citation gave Bill Burgan notice and an opportunity to be heard. They also contend the Burgan's takings claim should be dismissed because the issuance of the Citation was not sufficient to constitute a taking. These additional grounds will be addressed below.

///

### a. Article II, § 17 Due Process

Article II, § 17 of the Montana Constitution mirrors the Fourteenth Amendment to the United States Constitution and provides "no person shall be deprived of life, liberty, or property without due process of law." "It is well established that possessory interests in property invoke procedural due process protections." *Abott v. Latshaw*, 161 F.3d 141 (3rd. Cir 1998). Property interests expand beyond real property and are created and defined "by existing rules or understandings that stem from an independent source such as state law." *Weinberg v. Whatcom Cty.*, 241 F.3d 746, 753 (9th Cir. 2001) (*quoting Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972). The due process guarantee considers the totality of the unique facts in each case and "is ultimately measured by the fundamental fairness of the proceeding." *State v. Moore*, 417 P.3d 328, 331(Mont. 2018) (quoting *State v. Edmundson*, 317 P.3d 169 (Mont. 2014)).

Procedural due process is analyzed in two steps. The first asks whether the plaintiff has been deprived of an actual property interest, and the second considers whether the procedures provided by the deprivation are constitutionally sufficient. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). Sufficient procedures require an opportunity to be heard and notice of such opportunity. *Fuentes v. Shevin*, 407 U.S. 67 (1972).

Judge Ostby has previously determined that the factual allegations of the initial complaint were sufficient to establish the deprivation of a property interest. (Doc. 19 at 39-40). Since the relevant factual allegations on this issue have not been changed in the Complaint, the first step of the due process analysis is satisfied.

With respect to the second step, the Burgans submit they were deprived due process of the law when they were not provided a pre-deprivation hearing before the issuance of the Citation. (Doc. 56 at 18.) In *Fuentes*, the United States Supreme Court held that due process prohibits the state from depriving individuals of their property without a pre-deprivation hearing, and that the principles of due process apply to even a "temporary, nonfinal deprivation of property." 407 U.S. at 85. The Supreme Court has "usually held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." *Weinberg*, 241 F.3d 746, 753. (*quoting Matthews v. Eldridge*, 424 U.S. 319 (1976).

It is well-settled that due process requires notice and an opportunity to be heard to be given at a meaningful time and in a meaningful manner. *Matthews,* 424 U.S. at 333 (citations omitted). But "a pre-deprivation hearing is not required where the deprivation was not foreseeable or where it would otherwise be impracticable to provide such a hearing." *Weinberg*, 241 F.3d 746, 754. To determine what process is due "depends on a consideration of both the nature of

the governmental function involved and the private interests affected." *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 624 (citations omitted) (Powell, J., concurring).

Nixon and Rieger argue the Citation afforded the Burgans some form of notice and an opportunity to be heard before the justice of the peace. (Doc. 63 at 17.) Whether it was sufficient, or sufficiently meaningful, is another question. The Burgans maintain it was not; they contend they were deprived of their private interest in accessing their easement and headgate for 18 months. (Doc. 56 at 3.)

Based on the facts alleged, the Citation acted as an *ex parte* seizure depriving the Burgans of a property interest that was entitled to due process before the deprivation occurred. *See Harris v. County of Riverside*, 904 F.2d 497 (1990) (finding that procedure given to a landowner after the county deprived him of the use and enjoyment of his property was constitutionally insufficient.) Further, the deprivation of property was foreseeable because Nixon and Rieger were on notice of the nature of the dispute between the Burgans and Brien, and that the Burgans were being denied access to the easement and headgate.

As Judge Ostby determined, the Burgans have sufficiently alleged facts supporting the deprivation of their property rights. Further, Nixon and Rieger fail to show, based on the allegations in the Complaint, the process given was constitutionally sufficient. Therefore, the Court denies Nixon and Rieger's motion to dismiss the Burgans' Article II, § 17 due process claim.

### b.     Article II, § 29 Takings

Article II, § 29 of the Montana Constitution prohibits the taking of private property for public use without just compensation.  "It is a fundamental law of eminent domain that private property may not be taken without an owner's consent for the private use of another," and "both the United States and the Montana Constitutions prohibit a taking by the State for merely private use."  *City of Bozeman v. Vaniman*, 898 P.2d 1208, 1214 (Mont. 1995) (citations omitted).  The takings protections of the Montana and United States Constitutions are coextensive.  *Buhmann v. State*, 201 P.3d 70, 85 (Mont. 2008).  For this reason, and because the County merely adopts Nixon and Rieger's argument with respect to the illegal takings claim (Doc. 74 at 10), the following discussion applies to the Burgans' takings claim under both Article II, § 29 and the Fifth Amendment to the United States Constitution.

The Burgans allege that Nixon and Rieger's issuance of the Citation caused an unconstitutional taking: "Defendants in this matter engaged in an uncompensated taking through a raw misuse of government power . . . . They ousted the Burgans from their easement by serving them with a notice to appear on a fabricated criminal trespassing charge[,]" which directly benefited Brien.  (Doc. 69 at 20-21.)  To support their argument, the Burgans cite *Armendariz v. Penman*, 75 F.3d 211 (9th Cir. 1996), *overruled in part on other grounds by Crown Point*

*Dev., Inc. v. City of Sun Valley*, 506 F.3d 851 (9th Cir. 2007). There, owners of low-income housing units brought suit against city officials for ousting tenants and assessing code violations, ultimately necessitating closure of the properties. The plaintiffs alleged the actions were a pretext to allow a commercial developer to purchase and develop the area. *Id.* at 1313-14. The Ninth Circuit concluded that the complaint sufficiently alleged an unconstitutional taking for private use. *Id.* at 1320-21. Here, the Burgans similarly allege that they were deprived of access to their property by the Defendants for the benefit of Brien, which did not serve a valid public purpose. (Doc. 56 at 21.)

Nevertheless, Nixon and Rieger contend the Ninth Circuit "effectively determined that Burgan fails to state a claim on a takings theory under federal law." (Doc. 63 at 18.) The Burgans cite the Ninth Circuit's conclusion that "the Burgans have not met their burden of identifying law clearly establishing that a trespass citation temporarily preventing access to an easement constitutes a "meaningful interference" with a possessory property interest, a taking for the benefit of the servient estate owner, or a property deprivation lacking due process." *Burgan v. Nixon*, 711 F. App'x 855, 857 (9th Cir. 2017). But the Ninth Circuit's finding in this regard was made in connection with its discussion of qualified immunity, which requires that the contours of a right be so clearly established that "every reasonable official would have understood that what he is doing violates

that right." *Id.* Such a finding is not tantamount to a decision on the merits of the

Burgans' claim; it is simply a finding that the contours of the right were not clearly

established for qualified immunity purposes.

Therefore, the Court finds that the Burgans have stated a plausible claim for

relief against Nixon and Rieger for violating their rights under Article II, § 29 of

the Montana Constitution. Similarly, because the County has simply adopted

Nixon and Rieger's arguments, the Court finds the Burgans have stated a claim

under the Takings Clause of the Fifth Amendment for purposes of their claim

against the County.

### 4.      Bill Burgan States a Claim for Malicious Prosecution

Nixon and Rieger previously filed a motion to dismiss the initial complaint

on the grounds that Bill Burgan's malicious prosecution claim failed to state a

claim because the trespass charge was supported by probable cause. (Doc. 12 at

19.) Judge Ostby denied their motion, and determined that "under the totality of

the circumstances . . . [Nixon and Rieger] lacked probable cause to charge [Bill

Burgan] with criminal trespass." (Doc. 19 at 40.)

Nixon and Rieger now present two alternative grounds supporting their

argument that Bill Burgan's malicious prosecution claim should be dismissed: (1)

Bill Burgan failed to establish that either Nixon or Rieger were motivated by

malice, and (2) Rieger did not prosecute Bill Burgan. (Doc. 63 at 23-24.)

"A malicious prosecution begins in malice, without probable cause to believe the action can succeed, and finally ends in failure." *Plouffe v. Montana Dept. of Pub. Health and Human Servs.*, 45 P.3d 10, 14 (Mont. 2002). To prevail on a claim for malicious prosecution, the plaintiff must prove each of the following elements: (1) a judicial proceeding was commenced and prosecuted against the plaintiff; (2) the defendant was responsible for prosecuting or instigating that proceeding; (3) the defendant lacked probable cause; (4) the defendant was motivated by malice; (5) the judicial proceeding terminated in the plaintiff's favor; and (6) the plaintiff suffered damage. *Id.* Failure to establish just one of these elements requires judgment for the defendant. *Id.*

Bill Burgan has alleged sufficient facts to establish both disputed elements. First, he has sufficiently alleged that Nixon and Rieger were motivated by malice. "A defendant acts with malice when he or she is motivated by 'a primary purpose other than that of bringing an offender to justice.'" *Plouffe*, 45 P.3d at 17 (internal citations omitted). Furthermore, where a prosecution is motivated by a private purpose, rather than the vindication of the law, Montana law presumes a malicious intent. *Id*. (quoting *Rickman v. Safeway Stores*, 227 P.2d 607, 610 (Mont. 1951)). Bill Burgan has alleged that Nixon and Rieger issued the citations to help their friend, Brien, in his efforts to oust the Burgans from their easement. (*See e.g.* Doc.

56 at 20.)  Taken as true, this constitutes a private purpose other than that of bringing the Burgans to justice, triggering a presumption of malicious intent.

In addition, the Montana Supreme Court has repeatedly held that "malice may be inferred when want of probable cause for the underlying action is proven by the facts." *Plouffe*, 45 P.3d. at 17.  Judge Ostby previously found that the Burgans have sufficiently alleged the Citation was unsupported by probable cause. That finding permits the inference that the malice is present as well. Therefore, Bill Burgan has sufficiently alleged that the prosecution against him was motivated by malice.

Second, Bill Burgan has sufficiently alleged that Rieger was responsible for instigating the judicial proceeding.  Rieger argues that because the deputy gave Bill Burgan the Citation pursuant to Nixon's instruction, Rieger evades responsibility for instigating, prosecuting, or continuing the proceeding.  (Doc. 63 at 22).  The Court is not persuaded by this argument.  As alleged in the Complaint, Rieger consulted Nixon about Brien's demand that Bill Burgan be charged with trespassing, and then he instructed the deputy to sign and serve the Citation at the Burgan's home.  (Doc. 56 at 13).  The facts as alleged support Bill Burgan's argument that Rieger was responsible for instigating the prosecution.

For the foregoing reasons, the Court is satisfied that Bill Burgan has sufficiently alleged facts, accepted as true, to state a claim against Nixon and

Rieger for malicious prosecution that is plausible on its face. As discussed below, however, Lynette Burgan's malicious prosecution claim should be dismissed for failure to state a plausible claim.

### 5. Bill Burgan States a Claim for Abuse of Process

Abuse of process requires a showing of "(1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Hughes v. Lynch*, 164 P.3d 913, 918 (Mont. 2007) (quotations omitted). Abuse of process requires "some definite act or threat not authorized by the process, or aimed at an object not legitimate in the use of the process." *Id.* (citations omitted). Further, improper purpose often consists of coercion used to obtain a collateral advantage; *i.e.*, "the use of the process as a threat or a club." *Id.* Therefore, the Montana Supreme Court has held that "for a defendant to claim abuse of process, there must be an attempt by the plaintiff to use process to coerce the defendant to do some collateral thing which he could not be legally and regularly compelled to do." *Id.* (quoting *Brault v. Smith*, 679 P.2d 236, 240 (Mont. 1984)).

Nixon and Rieger argue that the Burgans' abuse of process claim is duplicative of their malicious prosecution claim, and should therefore be dismissed on the same grounds. (Doc. 63 at 25.) Since the Court has already concluded that

the Burgans have stated a claim for malicious prosecution, this reason for dismissal is not well-taken.

Nixon and Rieger also maintain that dismissal is proper because the Complaint fails to allege that they "performed any willful act not proper in the regular conduct of a criminal trespass case." (Doc. 63 at 25.) As already discussed in detail, the Complaint alleges precisely that: the issuance of a Citation without probable cause to oust the Burgans from their easement for the benefit of Brien. (Doc. 56 at 23–24.)

The Court thus concludes that Bill Burgan has stated a plausible claim for relief for abuse of process. But as discussed below, Lynette Burgan's abuse of process claim should dismissed for failure to state a plausible claim.

### C. Lynette Burgan's has Stated Due Process and Takings Claims under the United States and Montana Constitutions

On the motion to dismiss the Burgans' initial complaint, this Court dismissed Lynette's claims without prejudice after finding the complaint did not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (Doc. 19 at 41, 49.) In the present motion to dismiss the Complaint, Defendants maintain that Lynette Burgan has again failed to allege sufficient facts to withstand their renewed 12(b)(6) motion to dismiss. (Doc. 61 at 13; Doc. 63 at 14.)

The Burgans do not object to the current motion regarding the malicious prosecution and abuse of process claims since Lynette was never charged or prosecuted, a required element for both.  (Doc. 69 at 30.)  Accordingly, the Defendants' motion to dismiss Lynette Burgan's claims on those counts will be granted.

Nevertheless, Lynette maintains her due process and takings claims under both the United States and Montana Constitutions properly state a claim.  (Docs. 68 at 18, 69 at 29-30.)  For the reasons set forth below, the Court finds that the allegations contained in the Complaint state a plausible claim for relief.

The Court finds that the Burgans have cured the deficiency of the original complaint by providing additional factual allegations sufficient to allow the reasonable inference that Defendants can be liable to Lynette Burgan for constitutional deprivations.  (*cf.* Doc. 1; Doc. 19 at 41.)  Although Lynette "was never told she could not use the easement," "never spoke to a deputy," and "was not charged with trespass" (Doc. 63 at 13), she alleges that the issuance of the criminal citation to Bill and Chase Burgan interfered with her property rights.  "Between August 2013 and February 2015, neither Bill nor Lynette Burgan could access their headgate because they feared they would be arrested if they did so." (Doc. 56 at 17.)  As the Defendants point out, Lynette was not charged with trespassing, nor was she arraigned or prosecuted.  (Doc. 63 at 12.)  While this fact

requires dismissal of her claims for malicious prosecution and abuse of process under 12(b)(6) – a point Lynette concedes – it does not command the same fate for her federal and state constitutional claims.  The allegations of the Complaint are sufficient to establish that Lynette was precluded from accessing the easement and headgate because she feared she would be arrested or charged if she did so.

The Court is also unpersuaded by Defendants' argument that Lynette lacks standing.  (*See* Doc. 75.)  It is true that Lynette must allege an injury in fact that is both "concrete and particularized and actual or imminent," rather than "conjectural or hypothetical."  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).  Lynette has met this burden.  Taken as true, the Complaint alleges that Lynette has suffered an injury in fact: the unconstitutional deprivation of her protected property right in the easement and headgate.

Defendants also cite United States Supreme Court precedent for the proposition that a plaintiff "cannot rest [her] claim to relief on the legal rights or interests of third parties."  (Doc. 75 at 5) (quoting *Valley Forge Christian College v. American United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982)).  Lynette has not done so.  Rather, she has asserted her own legal rights and interests in the easement and headgate as well as her own injuries resulting from the alleged deprivation of her property.  (Doc. 56 at 17).  Accordingly, the

Court will deny Defendants' motions to dismiss Lynette Burgan's due process and takings claims under both the United States and Montana Constitutions.

## V. Conclusion

Based on the foregoing findings, the Court hereby ORDERS as follows:

1. Defendant Carbon County's Motion to Dismiss (Doc. 60) is **DENIED**;

2. Defendants Nixon and Rieger's Joint Motion to Dismiss (Doc. 62) is **GRANTED** as to Plaintiff Lynette Burgan's malicious prosecution claim (Count Five), and her abuse of process claim (Count Six); their motion is **DENIED** in all other respects.

DATED this 28th day of September, 2018.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge